**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **Case No.: 19-cr-134-PWG** |
| **CHRISTOPHER LEE WILLIAMS** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

This Memorandum Opinion addresses Christopher Lee Williams' Motion for compassionate release based on "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A).  ECF No. 62.  Mr. Williams was being held at the Correctional Treatment Facility ("CTF") in Washington, DC awaiting transfer to Bureau of Prisons ("BOP") custody, where he contracted COVID-19.   On June 5, 2020 I held a hearing on Mr. Williams' motion and granted the motion on the record.  *See* ECF No. 66.[1]  I issued an Order and Amended Judgment recording this decision.  ECF Nos. 67, 68.  This Memorandum Opinion memorializes the reasons for granting Mr. Williams' motion.

### Background

Mr. Williams filed his motion in the midst of the global COVID-19 pandemic.  The judges of this court have written extensively about the pandemic.  *See, e.g.*, *United States v. Carden*, JKB-15-0016, 2020 WL 1873951, at \*1 (D. Md. Apr. 15, 2020); *United States v. Decator*, CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020); *United States v. Bobbie Johnson*, RDB-14-0441, 2020 WL 1663360 (D. Md. Apr. 3, 2020).  Repeating a full description of its unprecedented nature and impact is not necessary here.  As Judge Blake summarized,

---

[1] The motion is fully briefed.  *See* ECF Nos. 62, 64, 65.

"[t]he world is now in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 2020 WL 2556496, at *1 (D. Md. May 20, 2020).   In short, the pandemic has created novel circumstances under which incarcerated individuals experience more difficulty taking necessary health precautions, such as frequent hand washing and practicing social distancing, and those with certain risk factors are more susceptible to severe illness from COVID-19. *Johnson*, 2020 WL 1663360 at *1.

The DC CTF, where Mr. Williams is detained, was particularly impacted by COVID-19. In a comprehensive opinion, Judge Kollar-Kotelly of the U.S. District Court for the District of Columbia made extensive findings regarding failures of the District of Columbia Department of Corrections ("DOC") to prevent the spread of COVID-19 in its facilities. *Banks v. Booth*, CCK-20-849, 2020 WL 1914896 (D.D.C. Apr. 19, 2020).   Judge Kottar-Kotelly held that inmates in DOC facilities had established a likelihood of success that they will be able to show that they have been exposed to an unreasonable risk of damage to their health and that the DOC acted with deliberate indifference. *Id.* at *6.   Judge Kottar-Kotelly granted a preliminary injunction directing the DOC to ensure prompt responses to sick calls, better documentation and tracking of inmate symptoms, treatment, and outcomes, better education and training of staff concerning screening procedures and use of personal protective equipment, better sanitation, enforcement of social distancing practices, consistent access to proper hygiene practices for inmates, and regular access to personal and unmonitored legal calls. *Id.* at *13–15.   As of April 19, 2020, the Government of the District of Columbia reported that 25 DOC personnel and 90 DOC residents tested positive for COVID-19. *Public Safety Agency COVID-19 Case Data*, D.C. GOV'T, https://coronavirus.dc.gov/page/public-safety-agency-covid-19-case-data.   Since that time, a total 84 DOC personnel and 207 DOC residents tested positive for COVID-19. *Id.* (reflecting total

positive results since data collection commenced in March 2020, including 75 DOC personnel and 194 residents who have tested positive and since recovered.)

Mr. Williams made an initial appearance on March 28, 2019, and was detained following a hearing held on April 1, 2019.  ECF Nos. 5, 13.  On January 13, 2020, Mr. Williams pled guilty to a violation of 21 U.S.C. § 841(b)(1)(C) for possession with the intent to distribute cocaine base.  ECF No. 50.  On May 1, 2020, Mr. Williams was sentenced to 27 months imprisonment pursuant to a Rule 11(c)(1)(C) plea agreement during.  ECF No. 60.  That sentencing took place during a telephonic proceeding due to the COVID-19 pandemic and Mr. Williams waived his appearance at that proceeding because he was at that time quarantined at CTF.  I recommended that Mr. Williams receive credit for the approximately 16 months Mr. Williams has been in custody between November 1, 2018 and November 5, 2018; January 17, 2019 and March 19, 2019, and March 28, 2019 to present.  *Id.*  Therefore Mr. Williams has 11 months left on his 27-month sentence.  However, Mr. Williams calculates that assuming he receives good time credit, he would serve just under 23 months and that his release date would be in approximately 7 months.  The Government does not dispute this calculation.  While he was at CTF awaiting transfer to BOP custody, Mr. Williams contracted COVID-19.  The pending motion for compassionate release followed.

## Discussion

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). However, there is an exception when modification is "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B).  Here Defendant requests a modification of his sentence for "compassionate release" under the First Step Act, as amended.

Congress originally enacted the First Step Act in 1984. *See* Pub. L. No. 98-473, 98 Stat. 2030 (1984). The "compassionate release" provision of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A)(i), permitted a court to alter a sentence upon a motion by the Director of the BOP. However, the BOP rarely used this authority. Accordingly, in 2018 Congress amended the compassionate release mechanism when it enacted the First Step Act of 2018. *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended, the compassionate release provision allows the court to act on a motion for compassionate release filed by a defendant. As revised, 18 U.S.C. § 3582(c)(1)(A) states as follows:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). Mr. Williams requests release based on the "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Therefore, under the statute, I must do the following: (1) determine whether Mr. Williams has fully exhausted all administrative remedies or 30 days have passed since the BOP received Mr. Williams' request to bring a motion for release on his behalf; (2) determine whether "extraordinary and compelling reasons" warrant a

4

sentence reduction that is "consistent" with applicable policy statements issued by the Sentencing Commission; and (3) consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." In regards to the second step of this framework, I join with the majority of courts that find that 18 U.S.C. § 3582(c)(1)(A)(i) as amended grants courts with independent discretion to decide whether there are "extraordinary and compelling reasons" to modify a sentence and does not require that a court defer to the Sentencing Commission's policy statements regarding this question. *See United States v. Wise*, ELH-18-72, 2020 WL 2614816, at *7–9 (D. Md. May 22, 2020) (holding the same and collecting cases). While not binding, the Sentencing Commission's policy statements may provide useful guidance. If Mr. Williams is eligible for compassionate release, I must also review his proposed plan for release into third party custody. I discuss each in turn.

### 1. Administrative Exhaustion

First, I must determine whether Mr. Williams' motion is ripe for review. 18 U.S.C. § 3582(c)(1)(A). I may only consider Mr. Williams' motion if he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or 30 days have passed since warden of defendant's facility received such a request. Judges of this court have held that it has no power to hear a motion for compassionate release if the Defendant has not exhausted his administrative remedies. *See Johnson*, 2020 WL 1663360 at *3; *United States v. King*, DKC-16-0484, 2020 WL 1505900, at *1 (D. Md. Mar. 30, 2020) (vacating court's previous orders to transfer Defendants to home confinement because they had not fully exhausted their administrative remedies); *Decator*, 2020 WL 1676219 at *1; *United States v. Underwood*, TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020); *United States v. Bryant*, CCB-95-202-3, 2020 WL 2085471, at *1 (D. Md. Apr. 30, 2020);

Case 8:19-cr-00134-PWG   Document 70   Filed 06/10/20   Page 6 of 12

*United States v. Maycock*, GLR-14-0133, 2020 WL 2395620, at *2 (D. Md. May 12, 2020);

*United States v. Barringer*, PJM-13-0129, 2020 WL 2557035, at *2–3 (D. Md. May 19, 2020)

(holding the exhaustion requirement was satisfied because the inmate had been sentenced but not

yet transferred to a BOP facility); *United States v. Brown*, CV ELH-17-475, 2020 WL 3034838,

at *3 (D. Md. June 5, 2020).

 The Government concedes that administrative exhaustion is satisfied in this case because

there is no BOP Warden to whom Mr. Williams may send a petition, and recognizes these

circumstances are parallel to those in *Barringer*.  ECF No. 65. at 1.  I agree, and find that the

administrative exhaustion requirement is satisfied.

## 2. Extraordinary and Compelling Reasons and Sentencing Commission Policy Statements

 Second, I must determine whether "extraordinary and compelling reasons" warrant a

sentence reduction and that such a reduction is "consistent" with Sentencing Commission

statements.   18  U.S.C.  §  3582(c)(1)(A).   The  applicable  Sentencing  Commission  policy

statements  are  found  in  U.S.S.G.  §  1B1.13,  which  recites  the  language  of  18  U.S.C.  §

3582(c)(1)(A) before it was amended in 2018, including that "the defendant is not a danger to the

safety  of  any  other  person  or  to  the  community,  as  provided  in  18  U.S.C.  §  3142(g)."   The

commentary to U.S.S.G. § 1B1.13 provides four examples of what constitutes "extraordinary and

compelling reasons" for a sentence reduction: (1) medical condition of the defendant; (2) age of

the defendant; (3) family circumstances; and (4) a catch-all "other reasons."  U.S.S.G. § 1B1.13

app.  note  1(A)–(C).   As  noted  above,  I  join  with  the  majority  of  courts  that  find  that  the

Sentencing Commission's policy statements constitute helpful guidance, but that I must make an

independent  determination  whether  extraordinary  and  compelling  reasons  warrant  a  sentence

reduction.  *See Wise*, 2020 WL 2614816 at *7-9.

Mr. Williams argues that extraordinary and compelling reasons exist here given the nature of the COVID-19 pandemic, that he has contracted COVID-19 while at CTF, that he is obese, one of the risk factors for COVID-19 complications, and that conditions at CTF are harsh including 23 hours of lockdown per day and difficulty maintaining personal hygiene.  ECF No. 62 at 8–10; June 5, 2020 hearing.   In response, the Government points out that the DOC is successfully treating many patients with COVID-19, and out of 190 inmates who have tested positive for COVID-19 at CTF, 170 inmates have recovered and 19 are in isolation – a far better recovery rate than the United States at large.  ECF No. 65 at 5, n.4.  Indeed, at the hearing, counsel for Mr. Williams stated that Mr. Williams appears to have recovered and has been released into the general inmate population, though counsel argued that Mr. Williams remains at risk and continues to face harsh conditions at CTF.

Judges in this court have found that the standard of extraordinary and compelling reasons was met during the COVID-19 pandemic where a defendant had serious medical problems that placed them at high risk for complications if they contracted COVID-19.  *See United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) (finding extraordinary and compelling circumstances based COVID-19 present at FCI Danbury and effectively being prevented from receiving necessary medical care for potential cancer); *United States v. Gutman*, RDB-19-069, ECF No. 82 at 3-4 (D. Md. May 13, 2020) (finding extraordinary and compelling reasons based on COVID-19 present at FCI Cumberland and high risk underlying medical conditions including multiple sclerosis for which Defendant takes an immunosuppressant and hypertension); *United States v. Wise*, ELH-18-72, 2020 WL 2614816, at *8 (D. Md. May 22, 2020) (finding extraordinary and compelling reasons based in part on presence of COVID-19 at

FCI Allenwood Defendant's facility and finding that Defendant "suffers from *all* of the maladies identified by the CDC as conditions that increase the risk of dire complications due to COVID-19" including being nearly 60 years old, having a kidney removed in 2018 and suffering a heart attack in 2019); *United States v. Riley*, ELH-16-0402, 2020 WL 3034843, at *6–7 (D. Md. June 4, 2020) (finding Defendant's cardiomegaly, or enlarged heart, qualified as an extraordinary compelling reason); *see also United States v. Wright*, TDC-17-0388, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) (finding that, had there been any cases of COVID-19 in Defendant's facility, Defendant's age, obesity, diabetes, and hypertension would have satisfied an extraordinary and compelling reason); *United States v. Staten*, PJM 01-284-4, 2020 WL 3051045, at *4–5 (D. Md. June 8, 2020) (finding Defendant's asymptomatic COVID-19 status and obesity were important but outweighed by the severity of the underlying offense and Defendant's persistent criminal history).

Judges in other circuits have found obesity as a contributing factor in analyzing an extraordinary and compelling reason for compassionate release during COVID-19. *See United States v. Zuckerman*, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (finding Defendant's age, diabetes, hypertension, and obesity satisfied an extraordinary and compelling reason); *United States v. Quintero*, 08-CR-6007L, 2020 WL 2175171, at *1 (W.D.N.Y. May 6, 2020) (finding Defendant's diabetes, compromised immune system, obesity, and hypertension satisfied an extraordinary and compelling reason); *United States v. Foreman*, 3:19-CR-62 (VAB), 2020 WL 2315908, at *4 (D. Conn. May 11, 2020) (finding Defendant's age, hypertension, and obesity satisfied an extraordinary and compelling reason); *United States v. Ullings*, 1:10-CR-00406, 2020 WL 2394096, at *4 (N.D. Ga. May 12, 2020) (finding Defendant's age, hypertension, and obesity satisfied an extraordinary and compelling reason).

Here, Mr. Williams contracted COVID-19 in May of 2020.  By the hearing held on June 5, 2020, Mr. Williams had ostensibly recovered and had been released back into the general inmate population.  Although recovered, it is uncertain whether Mr. Williams can contract COVID-19 more than once, and the potential long-term effects of the illness are still undetermined.  With a BMI of 32.5, Mr. Williams is considered obese.  *See Defining Adult Overweight and Obesity*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/obesity/adult/defining.html.   Some studies have found that the top comorbidities for COVID-19 patients were hypertension, obesity, and diabetes.  *See United States v. Pabon*, CR 17-165-1, 2020 WL 2112265, at *4 (E.D. Pa. May 4, 2020) (citing Safiya Richardson et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized with COVID-19 in the New York City Area*, JAMA (Apr. 22, 2020), https://jamanetwork.com/journals/jama/fullarticle/2765184).   Therefore these circumstances weigh in favor finding "extraordinary and compelling reasons" for a sentence modification.

In addition, regarding the Sentencing Commission Policy Statements, and as discussed more fully below, I find that Mr. Williams is not a danger to the community.  While he has one prior firearms conviction and many controlled substance convictions, he has no history of conviction of a crime of violence, and with sufficient conditions of supervision, he will not be a danger to the community if returned to it approximately seven months earlier than the termination of his custodial sentence.  Therefore due to contracting COVID-19, the uncertainty whether Mr. Williams will experience further complications related to COVID-19, his obesity as a risk factor for complications from COVID-19, the current conditions at CTF, and finding that Mr. Williams is not a danger to the community, I find that Mr. Williams has demonstrated "extraordinary and compelling reasons" for a sentence modification.

**3.   Sentencing Factors in 18 U.S.C. § 3553(a)**

Next, I must consider the sentencing factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Section 3553(a) provides that "[t]he court shall impose a sentence that is sufficient, but not greater than necessary," to comply with the following purposes: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). In making that determination, I must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant." These considerations are satisfied with a sentence modification

Here, Mr. Williams was convicted of a serious but non-violent drug offense. The Government argues that Mr. Williams is a danger to the community and has a long and uninterrupted history of criminal activity including six separate convictions for drugs offenses dating back to 1998, two convictions for driving under the influence, two convictions for illegally possessing a firearm, and multiple convictions for violations of parole. ECF No. 65 at 3–4. Although none of these are violent offenses, Mr. William's criminal history is indeed serious. In light of that, in this case Mr. Williams was sentenced at the high end of the applicable 21–27 month guideline range, for which he has served the majority of his time. Specifically, he has served sixteen months of what would be a twenty-three-month sentence with good time credits. Further, I may order home confinement and additional supervised release for the seven months that sentence would be reduced.

Given that Mr. Williams has contracted COVID-19 and his criminal history is primarily

drug-related, providing Mr. Williams with appropriate medical care and vocational training is a significant consideration.  The Government argues CTF is treating inmates successfully, though at the hearing Mr. Williams' counsel represented that all other vocational training has stopped. Notwithstanding Mr. Williams' ostensible recovery, much is still unknown regarding COVID-19 and any lingering complications, and the CTF is experiencing constrained resources.  A release would be consistent with providing ongoing medical care and provide opportunities for vocational training not present at CTF.

Further, Mr. Williams is not a danger to the community.  He is a non-violent drug offender and has had a history of employment.  Home confinement with location monitoring and supervised release, alongside vocational training, would address any potential concerns.  Mr. Williams has a viable release plan approved by the U.S. Probation Office, which indicates he would reside with his partner and son.

### 4.  Release to Third Party Custodian

The U.S. Probation Office report approved a third-party custody arrangement.  However, it noted a detainer lodged against Mr. Williams on May 28, 2020.  During the hearing, counsel for Mr. Williams explained that there is a substantial likelihood the detainer will be lifted.  On that basis, I find that release in this case would not be futile.

### Conclusion

For the foregoing reasons, Mr. Williams Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) is granted.  Mr. Williams' sentence is reduced to time served and the judgement modified to include seven months home confinement with location monitoring, followed by three years of supervised release.  As additional conditions of supervised release, Mr. Williams is to participate in vocational training and will be required to comply with all

directives of federal and state governments related to COVID-19.   An Order and Amended Judgment have issued separately.  ECF Nos. 67, 68.

Date: <u>June 10, 2020</u>                                           <u>          /S/                    </u>

                                                          Paul W. Grimm
                                                          United States District Judge